```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

David W. Huffer,                  :

      Plaintiff,                :

  v.                              :    Case No. 2:09-cv-434

Michael J. Astrue, Commissioner  :    JUDGE HOLSCHUH
of Social Security,

      Defendant.

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

    Plaintiff, David W. Huffer, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") discontinuing the payment of his social security disability benefits. He had first been awarded benefits in 1978, but on April 22, 2005, it was determined that his disability had ceased as of April 1, 2005.

    After this decision was affirmed by the Bureau of Disability Determination, plaintiff was afforded a hearing before an Administrative Law Judge on July 15, 2008. In a decision dated November 3, 2008, the Administrative Law Judge again upheld the termination of benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on March 26, 2009.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on August 5, 2009. Plaintiff filed a statement of errors on September 30, 2009 to which the Commissioner responded on November 25, 2009. Plaintiff filed a reply on December 28, 2009, and the matter is now ripe for decision. It should be noted that

plaintiff was awarded supplemental security income benefits based on a finding that he again met the eligibility requirements for those benefits on November 21, 2008, so the issue is only whether the Commissioner was obligated to pay benefits for any time period between April 1, 2005 and November 21, 2008.

## II. Plaintiff's testimony

Plaintiff's testimony at the administrative hearing revealed the following. Plaintiff, who was 44 years old at the time of the hearing, did not graduate from high school. He lives in a handicapped apartment and is able to drive a car, but drives only to doctors' appointments and to see his mother. (T. 343-44). He has some difficulty with reading and math and was in some special education classes at school. (Tr. 345-46).

Plaintiff walks with a cane because of problems with his legs. (Tr. 348-49). He has never held a job, but occasionally helped his stepfather in his painting work or helped a neighbor with car repairs. (Tr. 350-51). On a typical day, he takes medication, eats meals, watches television, and naps. (Tr. 352-53). He has trouble lifting a gallon of milk. (Tr. 355). He has been told he has a bone disease that affects his body's ability to retain calcium. (Tr. 358-59). He sees a psychiatrist for depression and anxiety. (Tr. 359). He is also being treated for diabetes. (Tr.360). He takes pain medication four times a day. (Tr. 362).

## III. The Medical Records

Pertinent medical and other records reveal the following. First, an investigator's report was prepared on March 17, 2005. The report noted various times at which plaintiff had said he had done work inconsistent with his claimed disability, or been injured in the course of such activities. The investigator's conclusion was that fraud or similar fault had been found, that plaintiff's family members had made false and misleading

-2-

statements about the extent of his disability, and that his statements concerning his condition could not be accepted as credible. (Tr. 120-21).

Many of the records relied on by the investigator were emergency room treatment records. They show the following. Plaintiff was seen at the Adena Hospital Emergency Room on August 21, 2003, complaining of chest wall pain. He reported that he had been lifting something heavy several days previously and had experienced increasing chest pain. The diagnosis was musculoskeletal strain of the anterior chest wall. (Tr. 158-60). He was seen again for the same problem five days later and his medication was changed. (Tr. 162-64). The following day, he returned to the emergency room and was diagnosed as having hyperventilated. His medication was discontinued at that time. (Tr. 166-68). The following month, he was treated for a hand injury that occurred when he "was swinging a hammer and hit the gutter and then the gutter hit his left hand." An x-ray was negative for any fractures and he was diagnosed with a left hand contusion. (Tr. 172-73). In November of the same year, he was treated for a cut finger. The injury occurred when he "caught his finger between a tire and rim." (Tr. 177). In May of the following year, he was treated for muscle pain resulting from his having "aggressively kicked a football." (Tr. 179).

A state agency reviewer completed a psychiatric review technique form on April 15, 2005. The diagnoses on that form included a depressive disorder and borderline intellectual functioning. Plaintiff was seen as having moderate impairments in the areas of maintaining social functioning and maintaining concentration, persistence and pace. He would have difficulty understanding, remembering and carrying out detailed instructions and interacting with co-workers and the public. The reviewer noted that there had been medical improvement in the area of

cognitive functioning since benefits were first awarded and that plaintiff could carry out three to four-step tasks and could work as long as the pace was not rapid and intense social interactions were not required. (Tr. 187-204). A different state agency reviewer expressed the opinion that, from a physical standpoint, plaintiff could perform light work activities with a few additional limitations. (Tr. 205-12). Other state agency reviewers reached similar conclusions. (Tr. 233-58).

Twenty-one pages of notes from Dr. Tucker, plaintiff's treating physician, appear in the record at Tr. 213-32. They cover office visits from 2003 to 2005. When plaintiff first saw Dr. Tucker, his primary complaints were depression about having just separated from his wife, tension headaches, and insomnia. He was given medications for all three conditions. By November, 2003, he reported that both his depression and headaches had responded well to medication. In March, 2004, he reported some right leg pain aggravated by walking on concrete. In October, 2004, plaintiff reported some diffuse back pain. An MRI done at that time showed an old fracture at L4 which resulted in some deformity, as well as some significant degenerative disease and spurring at L5-S1, and a CT scan showed some stenosis at L3-L4. Plaintiff broke a rib in November, 2004, as a result of falling onto a car. In April, 2005, Dr. Tucker completed a disability assessment, indicating in his office notes that plaintiff's disability began in childhood and was due to his osteogenesis imperfecta, his history of depression, and his diffuse musculoskeletal problems. On the form, he stated that plaintiff's problems included depression, hearing loss, and limitation of activities due to chronic leg and back pain. He thought plaintiff's ability to respond to stress was minimal. His medications were adjusted in April, 2005, in response to complaints that they were no longer working as well, and in July,

2005, he had improved and his condition was described as relatively stable.

The final two medical exhibits consist of more progress notes from Dr. Tucker and notes from the Adena Health System, including medication notes from plaintiff's psychiatrist, Dr. Esselstein. The former exhibit (which includes some treatment notes for 2003 to 2005 which are discussed above) show that plaintiff continued to see Dr. Tucker for his various physical ailments in 2006, 2007 and 2008, that he developed diabetes, and that his insomnia was being caused by leg pain but an increase in his dosage of Klonopin was helping to bring the insomnia under control. He was also having a problem with chronic sinus infections. Dr. Tucker wrote a letter on May 7, 2007, stating that certain notations in his 2003 records showing that plaintiff was gainfully employed were probably made in error. (Tr. 265-303).

The psychiatric notes show that plaintiff was meeting regularly with a counselor or psychiatrist from 2006 to 2008 and being treated for depression and anxiety. The first note shows a GAF rating of 60-65. He reported problems relating to adults. At times, he reported an increase in symptoms due to running out of medication. He received a letter in 2007 informing him that he had missed three of his last six appointments. He was frequently reminded that his sleep pattern was unhealthy. By 2008, he had missed six of thirteen appointments and was in danger of being terminated from the program. (Tr. 304-322).

### IV. The Expert Testimony

A medical expert, Dr. Johnson, testified at the administrative hearing. He identified plaintiff's medical impairments as a hearing deficit which is compensated for by hearing aids, a childhood bone disorder which caused his bones to fracture, a compression fracture at L4, chronic obstructive lung

disease, and Type II diabetes controlled by medication. (Tr. 372). These impairments limited plaintiff to working at the sedentary level with the condition that he sit for only half an hour at a time. He could lift five pounds frequently and ten pounds occasionally. He could occasionally stoop, bend and squat, and should not work around heights, dangerous machinery, or extremes of temperature. (Tr. 373-74).

A vocational expert, Mr. Brown, also testified at the administrative hearing. He said that someone with plaintiff's abilities, as described by Dr. Johnson, could do sedentary jobs like assembler, machine tender, or cashier. (Tr. 376). The number of cashier jobs would be reduced if plaintiff could not work around large crowds. (Tr. 378). If plaintiff were as limited as he testified, he could still do these jobs. (Tr. 380-81).

## V. The Administrative Decision

Based on the above evidence, the Commissioner found that at the time he was awarded benefits, plaintiff suffered from two medically determinable impairments, osteogenesis imperfecta and borderline mental retardation. As of the date of the administrative hearing, he suffered from osteogenesis imperfecta, diabetes mellitus, hearing impairment, chronic obstructive pulmonary disease with related tobacco addiction, degenerative disease of the lumbar spine, and affective and anxiety-related disorders. He had experienced medical improvement as of April 1, 2005, because his impairments were not of Listing severity as of that date. With his current impairments, he was able to perform a limited range of sedentary work with certain postural restrictions so long as he was not required to work at unprotected heights or around moving machinery and was not exposed to temperature extremes. He also was limited to the performance of routine tasks in a low-stress work environment

-6-

that does not involve large crowds. Because, according to the vocational expert, someone with plaintiff's work profile and these limitations could perform a substantial number of sedentary jobs, plaintiff was not found to be disabled.

## VI. Legal Analysis

In his statement of errors, plaintiff asserts that he is raising only two issues: that the Commissioner erred by terminating his benefits as of April 1, 2005, and that the Commissioner failed properly to consider the opinion of his treating physician, Dr. Tucker. In fact, his brief raises a number of additional claims, including a request for a sentence six remand based on new and material evidence concerning his mental impairments. These issues dealing with the sufficiency of the Commissioner's decision will be considered under the following standard, and the sentence six remand request will be evaluated separately.

### A. Sentence Four Remand

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever

in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

As noted in the Commissioner's memorandum, the first six issues raised in plaintiff's brief are that the Commissioner erred by "(1) finding [plaintiff] experienced medical improvement; (2) failing to give controlling weight to treating physician Dr. Tucker; (3) improperly weighing the other medical source opinions; (4) improperly found he had no difficulty hearing; (5) mischaracterized the medical evidence; [and] (6) should not have relied on the vocational expert's testimony...." Defendant's Memorandum in Opposition, Doc. #11, at 12. The Court adopts this characterization of plaintiff's claims and will address the issues in roughly that order.

The Court has little difficulty finding that there is substantial evidence of medical improvement on this record. No physician who expressed an opinion on the subject concluded otherwise. As the administrative decision notes, the basis of plaintiff's initial award of benefits was Listing 12.05(C). One of the two requirements of that section is a diagnosis of mental retardation. The state agency reviewer who evaluated plaintiff's mental functioning in 2005 diagnosed him with borderline intellectual functioning rather than mild mental retardation and noted that "he is clearly functioning above the MR range and is at least in the BIF range." (Tr. 202). Given this essentially uncontradicted evidence, the Commissioner was entitled to find

medical improvement. The more significant question is whether, with the impairments that were found to be present on or after April 1, 2005, plaintiff was still disabled.

The second, third and fifth issues raised by plaintiff can be grouped together. Essentially, he argues that the Commissioner should have given more, or even controlling, weight to the opinion of his long-time treating physician, Dr. Tucker, and that by failing to do so the Commissioner gave improper weight to the non-examining physicians and other sources whose residual functional capacity assessments were adopted in the administrative decision. Coupled with these arguments is the assertion that the administrative decision does not articulate any valid reasons for the Commissioner's choice to discount Dr. Tucker's opinion. There is both a substantive and a procedural component to this argument.

The substantive rule. A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. Cornett v. Califano, [Jan. 1980 - Sept. 1980 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶16,622 (S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. The weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). In evaluating a treating physician's

opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).

If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. Harris, 756 F.2d at 435. The Commissioner may have expertise in some matters, but cannot supplant the medical expert. Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir. 1963). The "treating physician" rule does not apply to a one-time examining medical provider, and the same weight need not be given to such an opinion even if it favors the claimant. Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994) (per curiam).

The procedural rule. As explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule." Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight. Two reasons underlie this procedural requirement. First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled. Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way. Id.

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record. Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Id. at 243, citing Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Court will first examine the statement of reasons given in the administrative decision for rejecting Dr. Tucker's opinion. This must be done before the Court can decide whether that statement cited to reasons which allow the Commissioner to discount or reject the opinion of a treating source.

As plaintiffs' briefs point out, the administrative decision contains surprisingly little discussion of Dr. Tucker's treatment of plaintiff's conditions. The summary of the medical evidence contained in part III above indicates a wealth of treatment notes had been received from Dr. Tucker, and they included a disability assessment from April, 2005 (a second disability assessment was an exhibit before the Appeals Council but not before the Administrative Law Judge). The notes span a time frame from 2003 to 2008. However, the administrative decision describes these treatment notes in the following sentence: "The record confirms conservative treatment for musculoskeletal complaints and depression." (Tr. 15). The only reference to Dr. Tucker by name comes at Tr. 18, and that reference relates solely to the issue of whether Dr. Tucker's 2003 note about plaintiff's being employed was mistakenly made. The administrative decision

-11-

neither acknowledges that Dr. Tucker actually expressed the opinion that plaintiff was disabled nor explains why that opinion was not given any weight.

The Commissioner's memorandum defends the sparse references to Dr. Tucker's notes by arguing that the non-examining sources upon whom the administrative decision relied took those notes into account and "incorporated his limitations into their RFC assessments." Commissioner's memorandum, at 12. Additionally, the memorandum asserts, at <u>id</u>., that "There was no opinion which the ALJ overlooked." Both of these statements appear to be inaccurate.

First, there is no reviewing source's opinion which incorporated Dr. Tucker's limitations. Dr. Richardson specifically stated that Dr. Tucker's opinions "cannot be given controlling weight," Tr. 203, and Dr. Steger said that "AP [attending physician] statement is not given weight as OIG investigation shows clmt's function is much higher than reported by AP or clmt." (Tr. 235). Dr. Conglebay's review does not indicate that she was aware that Dr. Tucker had expressed an opinion on the question of disability. (Tr. 257). Thus, two of the three reviewers specifically reject, rather than incorporate, Dr. Tucker's view, and the third makes no mention of it. And, of course, since all of the state agency reviews occurred in 2005, none of them make any mention of Dr. Tucker's treatment notes from 2006 to 2008.

Further, as noted immediately above, the administrative decision never mentions the April, 2005 statement of disability, even though it is part of the treatment notes, and even though several of the reviewer's reports specifically refer to it. From reading the administrative decision, the reviewing Court is left with the firm impression that this opinion was completely overlooked. Otherwise, it is difficult to explain why the

decision does not cite to 20 C.F.R. §404.1527 or analyze the opinion under that regulation, especially given the Rogers court's admonition that the failure to do so is normally reversible error.

It is possible that the Commissioner is asserting that if the state agency reviewers give reasons for rejecting a treating source's opinion and the administrative decision adopts their assessments of the claimant's residual functional capacity, the decision also implicitly adopts their rationale for rejecting the treating source's views. However, such an argument would appear to run afoul of Rogers, because neither the Court nor the claimant would actually know on what basis the ALJ, as opposed to the state agency reviewers, rejected the opinion. A more explicit statement of reasons was required than was given here, and a sentence four remand is appropriate for that reason.

This determination makes moot the fourth ground advanced by plaintiff for such a review, because, in reconsidering the weight to be given to Dr. Tucker's opinion, the issue of his hearing loss will necessarily be taken into account. The Court rejects the sixth argument, however, because although it does appear that the vocational expert was confused for a time because he was looking at exhibits from another case, that confusion was eliminated before he gave the key testimony about the jobs someone with plaintiff's background and limitations could perform.

B.  Sentence Six Remand

This leaves only the sentence six remand issue for consideration. Perhaps, in the context of the sentence four remand, the Commissioner would consider all of the additional evidence cited in support of the sentence six remand, but the Court cannot be sure of that. Consequently, it will also review this issue.

Legal Standard. The remand provision of 42 U.S.C. §405(g) was amended in 1980 in an effort to limit remands for consideration of additional evidence in social security cases. Willis v. Secretary of H.H.S., 727 F.2d 551 (6th Cir. 1984) (citing Dorsey v. Heckler, 702 F.2d 597 (5th Cir. 1983)). The statute provides that the Court may order a case remanded for further consideration of additional evidence "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). The plaintiff has the burden of proof on the issue of whether a remand is appropriate.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence for inclusion in the record during the hearing before the Administrative Law Judge. Willis v. Secretary of H.H.S., 727 F.2d 551; Birchfield v. Harris, 506 F.Supp. 251, 252-53 (E.D. Tenn. 1980). Evidence submitted after the ALJ's decision and which is not reviewed by the Appeals Council cannot be considered by the district court unless good cause is shown for the failure to have presented the evidence to the ALJ. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

To be "material" within the meaning of 42 U.S.C. §405(g), the new evidence must be relevant and probative and must establish a reasonable chance that the Commissioner would reach a different conclusion. Chancey v. Schweiker, 659 F.2d 676 (5th Cir. 1981); Thomas v. Schweiker, 557 F.Supp. 580 (S.D. Ohio 1983). New evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter. Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980). Additionally, the new evidence must relate to a condition which affected the

plaintiff's ability to work at the time the administrative decision was made. Evidence concerning a newly-developed medical condition is not ordinarily relevant to the question of whether the plaintiff was disabled at the time the Secretary's decision was entered. <u>Oliver v. Secretary of H.H.S.</u>, 804 F.2d 964 (6th Cir. 1986).

The primary evidence relied upon by plaintiff in support of a sentence six remand is the March 7, 2009 report of Dr. Esselstein to the effect that he had been treating plaintiff since June 20, 2006, that plaintiff has "distinct psychiatric illnesses," that he "has been consistent with his presentation of symptoms and impaired functioning" since the date of first treatment, and that his psychiatric issues are aggravated by his physical issues. Plaintiff also submitted a report from Dr. Tanley dated May 1, 2009, showing that plaintiff's full scale IQ was 56, and a state agency reviewer's opinion to the effect that Dr. Esselstein's letter was new and material evidence and entitled to be given controlling weight. The Commissioner concedes that all of this evidence is "new" because none of it existed at the time of the administrative decision under review, but argues that it is not "material" because it "relates to Plaintiff's subsequent claim that he became disabled following the ALJ's decision." Commissioner's memorandum, at 16.

Clearly, plaintiff has never argued that he became disabled only after the administrative decision was issued on November 3, 2008. His argument is that he never stopped being disabled since he was first awarded benefits in 1977. Further, Dr. Esselstein's letter relates his opinion of plaintiff's condition back to June, 2006, a date well before the administrative decision was made. The record contains treatment notes from Dr. Esselstein (which are also discussed only in passing in the administrative decision, and all of which post-date the state agency reviewers'

-15-

assessment of plaintiff's residual functional capacity) but no statement from him as to the significance of that treatment. Therefore, the new evidence submitted by plaintiff does relate to the issue of his disability from April, 2005 to November, 2008, and there is a reasonable probability that it would have affected the Commissioner's decision about disability in that time frame. Consequently, a remand under sentence six is also appropriate. That will give the Commissioner the opportunity to consider the new evidence as well.

## VII. Conclusion

For the forgoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentences four and six.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge